UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRISTOPHER WILLIAMS,** <br><br> Plaintiff, <br><br> v. <br><br> **DISTRICT OF COLUMBIA,** *et al.*, <br><br> Defendants. | Civil Action No. 22-114 (EGS) |

**DEFENDANT DISTRICT OF COLUMBIA'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

    I.  Legislative Overview ..................................................................................................... 1

    II. Plaintiff's Allegations and Requested Relief .................................................................. 4

LEGAL STANDARD ............................................................................................................... 5

ARGUMENT ............................................................................................................................. 6

    I.  Plaintiff's Complaint Should Be Dismissed for Failure To State a Claim. ..................... 6

        A.    Plaintiff's Equal Protection Claim Is Based on Conclusory Statements. ..................... 6

        B.    The Act Does Not Violate the Equal Protection Clause. ............................................. 7

        C.    Plaintiff's Home Rule Act Claim Is Duplicative of His Equal Protection Claim. ........ 9

    II. Plaintiff's Claim Under the Home Rule Act Also Warrants Dismissal for Lack of Subject Matter Jurisdiction Because the Home Rule Act Does Not Create a Cause of Action. ........ 11

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 5, 6, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 5, 6

*Dixon v. District of Columbia*, 666 F.3d 1337 (D.C. Cir. 2011) .................................................. 7

*Jackson v. District of Columbia*, 826 F. Supp. 2d 109 (D.D.C. 2011) ......................................... 6

*Johnson v. Interstate Mgmt. Co.*, 849 F.3d 1093 (D.C. Cir. 2017) ............................................. 11

*Kurtz v. United States*, 798 F. Supp. 2d 285 (D.D.C. 2011) ...................................................... 11

*Lee v. United States Agency for Int'l Dev.*, 859 F.3d 74 (D.C. Cir. 2017) ................................. 11

*Mykonos v. United States*, 59 F. Supp. 3d 100 (D.D.C. 2014) .................................................... 6

*Nat'l Trust for Historic Preservation v. Blanck*, 938 F. Supp. 908 (D.D.C. 1996) ..................... 11

*Nurriddin v. Bolden*, 818 F.3d 751 (D.C. Cir. 2016) .................................................................. 6

*Rogers v. Lodge*, 458 U.S. 613 (1982) ........................................................................................ 7

*Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373 (D.D.C. 2015) ............................................ 6

*United States v. Simmons*, Civil Action No. 18-344, 2022 U.S. Dist. LEXIS 79289 (D.D.C. May 2, 2022) ................................................................................................................. 9, 10, 11

*Washington v. Davis*, 426 U.S. 229 (1976) .................................................................................. 7

*WMI Liquidating Trust v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44 (D.D.C. 2015) .............. 10

*Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010) ......................................... 10

**Statutes**

D.C. Code § 1-1011.01 ............................................................................................................ 1, 2

D.C. Code § 1-1041.03 ................................................................................................................ 2

D.C. Code § 1-201.02 ............................................................................................................ 9, 11

D.C. Code § 1-203.02 ................................................................................................................ 10

D.C. Code § 1-204.01 ................................................................................................................ 10

D.C. Code § 1-206.01 ................................................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(1) ..............................................................................................................6

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................5

**Legislative History**

Report on B24-371, "Ward Redistricting Amendment Act of 2021" (Nov. 19, 2021) .........passim

## INTRODUCTION

Plaintiff alleges that, when the Ward Redistricting Amendment Act of 2021 (the Act) was enacted, the Council of the District of Columbia (D.C. Council) improperly refused to move the Southwest Waterfront neighborhood from Ward 6 to Ward 8 as he requested, in violation of the Equal Protection Clause and the Home Rule Act. Plaintiff, however, has failed to state a claim for relief.

Plaintiff has not plausibly alleged an equal protection claim because it is based on conclusory statements devoid of factual support. By law, the District of Columbia (the District) must rebalance its population after every United States Census to ensure its eight wards are roughly equal in size. Far from violating the Equal Protection Clause, the decision not to remove the Southwest Waterfront neighborhood from Ward 6 was intended to preserve the voting strength of African American residents. Further, plaintiff's Home Rule Act claim fails because it is duplicative of his Equal Protection Clause claim, but regardless, signing the Act into law was not a violation of the Home Rule Act. Indeed, this Court lacks subject matter jurisdiction over plaintiff's claim under the Home Rule Act because the Home Rule Act does not provide a cause of action.[1] Plaintiff's Complaint should be dismissed.

## BACKGROUND

**I.   Legislative Overview**

Under District of Columbia law, following each decennial United States Census, the D.C. Council must pass legislation making any adjustments to the boundaries of the District's eight election wards necessitated by shifts in the District's population. *See* D.C. Code § 1-1011.01(b).

---

[1]   The District also adopts any additional arguments made by the Councilmember Defendants in support of their motion to dismiss the Complaint, except the immunity argument, which does not pertain to the District of Columbia.

Any such changes must ensure the wards remain "compact and contiguous" and "approximately equal in population size." *Id.* § 1-1011.01(c). Although District law does not define "compact and contiguous," the population of each ward must end up nearly equal to the population of every other ward, not deviating by more than a specified percentage except as a result of "census geography or from the promotion of a rational public policy." *Id.* § 1-1011.01(f). Additionally, as relevant here, any changes to the ward maps cannot have "the purpose or effect of diluting the voting strength of minority citizens." *Id.* § 1-1011.01(g).

On December 29, 2021, Mayor Muriel Bowser signed into law the Ward Redistricting Amendment Act of 2021 (the Act). *See* 69 D.C. Reg. 10 (Jan. 7, 2022), available at https://bit.ly/39ex1WV (codified at D.C. Code § 1-1041.03). Cognizant of the many legal requirements for redrawing the District's wards, the Council's Committee of the Whole, Subcommittee on Redistricting (the Subcommittee) published an extensive report detailing the purpose and methodology behind the Act. *See* Report on B24-371, "Ward Redistricting Amendment Act of 2021" (Nov. 19, 2021), available at https://bit.ly/3Q6tdaT. As the Subcommittee explained, the District recorded a total population of 689,545 in the 2020 Census, which, under District law, required that the District's eight wards contain between 81,883 and 90,503 residents each. *Id.* at 1. The Subcommittee considered the population change in each ward and determined that Wards 6, 7, and 8 must be redrawn to comply with District law. *Id.* at 10. After extensive resident outreach that included three city-wide and eight ward-specific public hearings, *id.* at 11, the Subcommittee drafted a new map based on six identified principles, seeking to achieve a map that (1) gives residents equal representation, (2) is racially equitable, (3) consists of wards that are compact and contiguous, (4) keeps communities of interest together, (5) keeps "Census tracts" together as much as possible, and (6) avoids unnecessary radical change in

boundaries. *See id.* at 17. The resulting map made no changes to Wards 3 and 4, and made small changes to Wards 1, 2, and 5. Wards 6, 7, and 8, were adjusted as follows:

> **Ward 6:** Transfer the Shaw Census tracts into Ward 2; transfer most of Navy Yard to Ward 8; change border with Ward 7 to be C Street NE to the north, to 15th Street NE, down to Potomac Ave SE, to 11th Street SE, returning Kingman Park to Ward 6
>
> **Ward 7:** Change the border with Ward 6 to be C Street NE to the north, to 15th Street NE, down to Potomac Ave SE, to 11th Street SE, returning Kingman Park to Ward 6
>
> **Ward 8:** Accept Navy Yard from Ward 6

*Id.* at 19. The Subcommittee explained that beyond simply adding 6,700 residents to Ward 8, *id.*, moving Navy Yard from Ward 6 to Ward 8 was advantageous because Navy Yard's population "is not so large that it dilutes the voting power" of Ward 8 residents, yet "is large enough to host a full stand-alone Advisory Neighborhood Commission …," *id.* at 20. Other portions of Ward 6 were left in place, however, to establish better population balance "and to avoid diluting the voting strength of voters who live east of the [Anacostia R]iver." *Id.* The Subcommittee also recommended returning most of the Shaw neighborhood north of New York Avenue NW to Ward 2, where it was from 1975 until 2011, which would reduce the population of Ward 6 by an additional 10,000 residents. *Id.* at 23-24.

In its report, the Subcommittee also identified other proposals it ultimately rejected and explained its rationale for doing so. One such rejected proposal would have had "Ward 8 absorb all of the Southwest neighborhood West of the Anacostia River." *Id.* at 29. The Subcommittee observed that Southwest, of which the Southwest Waterfront is one part, is "a single community of interest, and should not be divided," *id.*, and moving it wholesale from Ward 6 to Ward 8 would

3

make balancing ward populations difficult and risk "dilut[ing] the voting power of African American residents east of the river." *Id.* at 30.

On September 29, 2021, the Subcommittee held its first hearing. Compl. [1] ¶ 18. The Subcommittee released its final recommendation on November 19, 2021, providing the rationale for the recommended changes and supporting documents. Compl. ¶ 22. On December 6, 2021, the D.C. Council Office of Racial Equity (CORE) released its racial equity impact assessment of the redistricting bill and concluded that the bill would "likely exacerbate racial inequity in the District of Columbia." *Id.* ¶ 21. The following day, the D.C. Council Committee of the Whole met to discuss the redistricting bill, which it passed with slight amendments and without making any changes based on the CORE report. *Id.* ¶¶ 23, 24. Then, on December 21, 2021, the D.C. Council voted a second time on the final map that kept the Southwest Waterfront in Ward 6. *Id.* ¶ 25. On December 29, 2021, Mayor Bowser signed the Act, initiating the congressional review period.[2] *Id.* ¶ 26.

## II. **Plaintiff's Allegations and Requested Relief**

On February 18, 2022, plaintiff brought suit against the District and other defendants, alleging the proposed redistricting map violated his equal protection rights when the D.C. Council made substantial changes to the ward apportionment map. Compl. ¶¶ 1-2. Plaintiff alleges he submitted a map to the Subcommittee that recommended the Southwest Waterfront neighborhood be placed into Ward 8, rather than remain in Ward 6. *Id.* ¶ 17.

---

[2]   Once the Mayor approves a Bill, it becomes an Act and is sent to Congress for a 30-day review period. If the review period expires without a joint resolution disapproving of the Act being approved by the President, the Bill becomes a Law. *See* How a Bill Becomes a Law, D.C. Council Website, https://dccouncil.us/how-a-bill-becomes-a-law/ (last visited June 13, 2022).

4

Plaintiff provided oral testimony before the Subcommittee and asked that the Southwest Waterfront be moved from Ward 6 based on inadequate political representation and "constitutional violations." *Id*. Plaintiff acknowledges that the Subcommittee held ward-level hearings between October and November 2021. *Id.* ¶ 19. Plaintiff contends that during this time he further voiced his support for moving the Southwest Waterfront out of Ward 6, and on November 3, 2021, he submitted a second proposed redistricting map. *Id*. ¶¶ 19, 20.

Plaintiff contends that the District's redistricting plan "relied on [the] faulty premise … not consistent with the US Constitution" that the Equal Protection Clause applied to the District, even though it is not a state. *Id*. ¶ 2. He also alleges that the District violated the Equal Protection Clause and the Home Rule Act because it lacked authority to even propose a redistricting map. *Id.* ¶ 4. Plaintiff specifically takes issue with the Act because it keeps the Southwest Waterfront neighborhood in Ward 6, contrary to his wishes. *See id*. ¶¶ 17, 19-20, 26. Plaintiff seeks a declaratory judgment that the District "exceeded constitutional and congressional authority" in violation of his equal protection rights. *See* Compl. (Prayer for Relief) at 12. Plaintiff also requests an order enjoining the Act, an award of compensatory damages, and costs and fees. *Id*.

## LEGAL STANDARD

A case must be dismissed when a party has failed to set forth "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the well-pleaded factual allegations must be taken as true, a plaintiff must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Jackson v. District of Columbia*, 826 F. Supp. 2d

109, 120 (D.D.C. 2011). Courts need not accept as true conclusory "assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 679. The Court "need not … accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations adopted) (internal quotation marks omitted).

Dismissal is also appropriate any time a court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Mykonos v. United States*, 59 F. Supp. 3d 100, 103 (D.D.C. 2014). "[I]n deciding a 12(b)(1) motion, a court need not limit itself to the complaint; rather, it may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction in the case." *Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373, 376 (D.D.C. 2015) (citations and internal quotation marks omitted).

## ARGUMENT

### I. Plaintiff's Complaint Should Be Dismissed for Failure To State a Claim.

#### A. Plaintiff's Equal Protection Claim Is Based on Conclusory Statements.

Plaintiff's equal protection claim fails because it contains conclusory assertions that are not supported by any factual allegations. To survive a motion to dismiss, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Here, plaintiff generally alleges that "[t]he Defendants erroneously and illegitimately misappropriated the Equal Protection Clause," without providing any supporting facts, and alleges that he is being "irreparably harmed," but does not specify the type of harm he suffers. Compl. ¶ 28. Courts need not accept as true conclusory "assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 679.

6

### B. The Act Does Not Violate the Equal Protection Clause.

Plaintiff alleges that in redrawing the District's wards, the District of Columbia "relied on a faulty premise … not consistent with the US Constitution," namely that the District incorrectly interpreted the Equal Protection Clause of the Fourteenth Amendment because the clause does not apply to the District of Columbia. Compl. ¶¶ 2, 8. Plaintiff asserts that "[t]he proposed redistricting map violates his equal protection rights since the Defendants are seeking to protect a right that they are not constitutionally or statutorily permitted to uphold." *Id.* ¶ 4. Plaintiff misunderstands the application of the Equal Protection Clause as it pertains to the District. In any case, the Act does not violate the Equal Protection Clause.

"[T]he Equal Protection Clause of the Fourteenth Amendment applies to the District of Columbia through the Due Process Clause of the Fifth Amendment." *Dixon v. District of Columbia*, 666 F.3d 1337, 1339 (D.C. Cir. 2011). The Supreme Court has established that voting districts may violate the Equal Protection Clause when they are "'conceived or operated as purposeful devices to further racial discrimination' by minimizing, cancelling out or diluting the voting strength of racial elements in the voting population." *See Rogers v. Lodge*, 458 U.S. 613, 617 (1982) (quoting *Whitcomb v. Chavis*, 403 U.S. 124, 149 (1971)). These cases "are thus subject to the standard of proof generally applicable to Equal Protection Clause cases," specifically the "'quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose.'" *Rogers*, 458 U.S. at 617 (quoting *Washington v. Davis*, 426 U.S. 229, 240 (1976)). Discriminatory intent "need not be proved by direct evidence," but may be "'inferred from the totality of the relevant facts.'" *Rogers*, 458 U.S. at 618 (quoting *Washington*, 426 U.S. at 242).

7

Plaintiff takes issue with the Act because the Southwest Waterfront neighborhood was not removed from its current ward, Ward 6, after he submitted a map to the Subcommittee recommending that it be moved to Ward 8, Compl. ¶ 17, and later testified before the Subcommittee and requested that the neighborhood be moved out of Ward 6, *id.* ¶ 18. Plaintiff requested that the Southwest Waterfront be moved from Ward 6 "due to poor political representation from a succession of Ward 6 representatives and due to constitutional violations," and highlighted his concerns with voting dilution in Wards 7 and 8, as well as the harm gentrification and redevelopment, cause Black communities west of the Anacostia River. *Id.*

The redistricting does not violate the Equal Protection Clause because the Subcommittee carefully considered the effects of representation. *See* Report on B24-371 at 2 ("Though the fundamental duty of redistricting is to rebalance the population to ensure every resident has an equal voice in government, any new political boundaries must be drawn in a way that does not dilute the voting strength of minority residents. The Subcommittee considered this principle carefully as it examined how to blend neighborhoods of varying racial and economic composition, recognize and define communities of interest, and respect the District's natural and political geography."); *id.* at 1, 3.

The Subcommittee elicited public recommendations and hosted three city-wide and eight ward-specific public hearings. *See* Report on B24-371 at 11; *see also* Compl. ¶¶ 16-19. The Subcommittee discussed some of the proposals it ultimately rejected and explained its rationale for doing so. For example, one rejected proposal would have had "Ward 8 absorb all of the Southwest neighborhood West of the Anacostia River." *See* Report on B24-371 at 29. The Subcommittee noted that Southwest, of which the Southwest Waterfront is one part, is "a single community of interest, and should not be divided," *id.*, and that moving it from Ward 6 to Ward 8

8

would make balancing ward populations difficult and risk "dilut[ing] the voting power of African American residents east of the river." *Id.* at 30. Additionally, the Subcommittee rejected the idea of moving the Southwest neighborhood across the Anacostia River because of the potential risk of creating imbalances in racial representation and diluting the minority vote. *Id.* at 3 (explaining that the Subcommittee's recommendation to increase Wards 8 and 7 contiguously along the Anacostia River will not dilute the voting strength of Black residents, and that the reduction to Ward 6 will reunite Rosedale and Kingman Park, which are the only predominantly Black neighborhoods in the greater Capitol Hill area).

The Subcommittee's final map balances the legal requirement of equal representation with a strong interest in advancing economic and racial diversity and preserves the voting strength of Black residents east of the Anacostia River. *Id.* Though plaintiff may be unsatisfied with the Subcommittee's redistricting map, that does not give rise to an equal protection claim; plaintiff's desire to move his neighborhood to another voting district is not actionable here.

### C. **Plaintiff's Home Rule Act Claim Is Duplicative of His Equal Protection Claim.**

The purpose of the Home Rule Act is to serve as a "'compromise between continued congressional oversight and District autonomy.'" *See United States v. Simmons*, Civil Action No. 18-344, 2022 U.S. Dist. LEXIS 79289, at *5 (D.D.C. May 2, 2022) (quoting *Feldman v. Bowser*, 315 F. Supp. 3d 299, 303 (D.D.C. 2018)). "Although Congress reserved the right to enact legislation concerning the District on any subject, D.C. Code § 1-206.01, the Home Rule Act also set forth the District's Charter, which established the means of governance of the District and essentially serves as its constitution." *Simmons*, 2022 U.S. Dist. LEXIS 79289, at *5-6; D.C. Code § 1-201.02. Through the Home Rule Act, Congress delegated, to the greatest extent possible, certain legislative powers to the District consistent with the constitution in order to relieve

9

Congress of the burden of legislating essentially local district matters. D.C. Code § 1-201.02. The Charter established the D.C. Council as the District's legislative branch, and the Council was vested with legislative power, which extends to all rightful subjects of legislation within the District. *See Simmons*, 2022 U.S. Dist. LEXIS 79289, at *6; D.C. Code §§ 1-204.01, 1-203.02.

Plaintiff's Home Rule Act claim fails because it is duplicative of his Equal Protection claim. "As a matter of judicial economy," courts should dismiss duplicative claims. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010); *see also WMI Liquidating Trust v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44, 59 (D.D.C. 2015) (citing *id.*). Claims are duplicative when they "stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Wultz*, 755 F. Supp. 2d at 81 (citing *McGee v. District of Columbia*, 646 F. Supp. 2d 115, 121-22 (D.D.C. 2009)). Plaintiff merely alleges that the District "failed to comply with Congress' plain and clear self-governance dependent on laws remaining consistent with the Constitution of the United States [*sic* throughout]." Compl. ¶ 32. Insofar as plaintiff contends the Act is unconstitutional, plaintiff merely repeats his Equal Protection claim. This duplicative claim should, therefore, be dismissed. *Wultz*, 755 F. Supp. 2d at 81-82. But if plaintiff means to identify a standalone statutory violation of the Home Rule Act, plaintiff identifies no specific provision of the Home Rule Act that he believes the District violated and alleges no way in which he has been harmed as a result. *See generally* Compl. Therefore, plaintiff's claim cannot survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (explaining that a complaint does not suffice if it contains "naked assertions devoid of further factual enhancement").

Even if plaintiff had alleged facts to support his Home Rule Act claim, it would still fail because the District has not violated the Home Rule Act. The D.C. Council serves as the District's

legislative body, *Simmons*, 2022 U.S. Dist. LEXIS 79289, at *6, and has the authority to govern the solely local matter of reapportioning the District's wards, D.C. Code § 1-201.02.[3]

## II. Plaintiff's Claim Under the Home Rule Act Also Warrants Dismissal for Lack of Subject Matter Jurisdiction Because the Home Rule Act Does Not Create a Cause of Action.

Additionally, plaintiff cannot bring a claim under the Home Rule Act because he has not identified a private right of action created by the statute. In the absence of a private right of action, the Court does not have subject matter jurisdiction and should dismiss this claim. *See Kurtz v. United States*, 798 F. Supp. 2d 285, 290 (D.D.C. 2011) ("Because the lack of a private right of action precludes the existence of subject-matter jurisdiction, … claims suffering from this jurisdictional defect may be dismissed sua sponte.").

Federal rights of action to enforce federal laws are created by Congress and "may be created either explicitly or implicitly." *Lee v. United States Agency for Int'l Dev.*, 859 F.3d 74, 77 (D.C. Cir. 2017). An explicit right of action is created by the text of the relevant statute. *Id.* "In order to establish an implied private right of action under a federal statute, a plaintiff bears a relatively heavy burden of demonstrating that Congress affirmatively or specifically contemplated private enforcement when it passed the relevant statute." *Nat'l Trust for Historic Preservation v. Blanck*, 938 F. Supp. 908, 914 (D.D.C. 1996) (quoting *Samuels v. District of Columbia*, 770 F.2d 184, 194 (D.C. Cir. 1985)). Demonstrating that Congress intended to provide a cause of action is "a high bar to clear." *Johnson v. Interstate Mgmt. Co.*, 849 F.3d 1093, 1097 (D.C. Cir. 2017).

---

[3] Plaintiff seeks compensatory damages, but even if the enactment of the Ward Redistricting Amendment Act of 2021 were a violation of the Equal Protection Clause or the Home Rule Act, plaintiff would still not be entitled to damages because plaintiff has not alleged—nor can he establish—municipal liability under 42 U.S.C. § 1983.

Plaintiff does not identify any specific provision of the Home Rule Act that creates an explicit or implicit cause of action. Nor could he. Plaintiff's only contentions are that the District "failed to comply with Congress' plain and clear self-governance dependent on laws remaining consistent with the Constitution of the United States," Compl. ¶ 32, and that "[t]he Home Rule Act had neither the intent nor the effect of making the District of Columbia a State," *id.* ¶ 33. There is no dispute that the District is not a state, leaving plaintiff no grounds to bring suit on that basis. And the Home Rule Act provides no separate cause of action for claims that the District did not act "consistent with the Constitution of the United States."

## CONCLUSION

For the foregoing reasons, the Court should grant the District of Columbia's motion and dismiss plaintiff's Complaint with prejudice.

Dated: June 16, 2022.    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Shani C. Brown*
SHANI C. BROWN [1617726]
MICAH BLUMING [1618961]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 727-6606; (202) 741-0554 (fax)
shani.brown1@dc.gov

*Counsel for the District of Columbia*