# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
                                              )
CHRISTOPHER M. WILLIAMS,                       )
                                              )
          Plaintiff,                    )
                                              )
      v.                                 )     Civil Action No. 22-0114 (EGS)
                                              )
DISTRICT OF COLUMBIA, *et al.*,                )
                                              )
          Defendants.                   )
———————————————————————— )

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on two motions to dismiss: Defendants Councilmembers of the Council of the District of Columbia's Motion to Dismiss Plaintiff's Complaint (ECF No. 10) and Defendant District of Columbia's Motion to Dismiss Plaintiff's Complaint (ECF No. 9). Because plaintiff has withdrawn his claims against the Councilmember Defendants (ECF No. 14), the Court will deny their motion as moot and dismiss Nyasha Smith, Phil Mendelson, Anita Bonds, Robert White, Elissa Silverman, Christina Henderson, Brianne Nadeau, Brooke Pinto, Mary Cheh, Janeese Lewis-George, Kenyan McDuffie, Charles Allen, Vincent Gray and Trayon White as party defendants.

The District of Columbia adopts the Councilmembers' argument that dismissal under Federal Rule of Civil Procedure 12(b)(1) is warranted because plaintiff lacks standing. *See* Def. District of Columbia's Mem. of P. & A. in Support of Mot. to Dismiss. Pl.'s Compl. (ECF No. 9-1, "DC Mem.") at 5 n.1; Reply in Further Support of Def. District of Columbia's Mot. to Dismiss Pl.'s Compl. (ECF No. 16, "Reply") at 4-5; Defs. Councilmembers of the Council of the District of Columbia's Mem. in Support of Mot. to Dismiss Pl.'s Compl. (ECF No. 10-1,

"Councilmembers' Mem.") at 3-5.[1]  In addition, the District moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.  *See generally* DC Mem. at 10-13.  For the reasons discussed below, the Court GRANTS the District of Columbia's motion to dismiss.

## I. BACKGROUND

The Council of the District of Columbia is responsible for "divid[ing] the District into 8 compact and contiguous election wards, each of which shall be approximately equal in population size," D.C. Code § 1-1011.01(c), based on the official report of the federal decennial census for the District of Columbia, *see id.* § 1-1011.01(a).  "The Council shall, by act after public hearing, make any adjustment in the boundaries of election wards that is necessary as a result of population shifts and changes."  *Id.* § 1-1011.01(b).

The Chair of the Council established a Subcommittee on Redistricting within the Committee of the Whole ("Subcommittee") to lead the effort to redraw ward boundaries, *see* Compl. ¶ 14; DC Mem. at 6-8, in light of 2020 census data the United States Census Bureau released in September 2021, *see* Compl. ¶¶ 14-15.  To this end, the Subcommittee "launched a website on September 17, 2021 to enable the public to create [its] own recommendations on redrawing ward . . . boundaries," Compl. ¶ 16, and held public hearings, *see id.* ¶¶ 18-19.

Plaintiff Christopher Williams, a resident of Southwest, Washington, DC in Ward 6, *see id.* ¶ 5, submitted two proposed ward boundary maps, *see id.* ¶¶ 17, 20, and testified before the Subcommittee twice, *see id.* ¶¶ 18-19, recommending that his "Southwest-Waterfront neighborhood be put into Ward 8 rather than [remain] in its current ward of Ward 6," *id.* ¶ 17.

---

[1]  In this Memorandum Opinion, all page numbers are those designated by CM/ECF.

The complaint quoted at length from testimony plaintiff presented to the Subcommittee at its September 29, 2021, hearing.  *See generally id.* ¶ 18.  Plaintiff stated that "Ward 6 is the nation's epicenter of gentrification and Black displacement," that "[r]acial injustices in housing, income and health in Southwest are rampant," and that "conditions in Southwest do not live up to the U.S. Constitution of Equal Protection under the law."  *Id.* (emphasis removed).  He urged the Subcommittee "to give serious thought to the harm that this acute gentrification and redevelopment is causing throughout our black communities west of the Anacostia River[.]"  *Id.* Further, plaintiff admonished the Council "to take the Constitution seriously around equal protection of the law."  *Id.* (emphasis removed).  Plaintiff testified at a Subcommittee hearing in Ward 6 on November 3, 2021, "voic[ing] his support for Southwest moving out of Ward 6 due to 1) poor political representation by a succession of ward representatives, 2) the negative effects of neighborhood change on Black populations, including displacement, and 3) constitutional violations."  *Id.* ¶ 19.

On November 19, 2021, the Subcommittee issued its Report on B24-371, Ward Redistricting Amendment Act of 2021, recommending, among other matters, that the boundaries of Wards 6 and 8 be redrawn.[2]  The boundaries ultimately approved by the full Council and the Mayor of the District of Columbia left plaintiff's Southwest Waterfront neighborhood in Ward 6. *See* D.C. Code § 1-1041.03 (codifying new ward boundaries pursuant to the Ward Redistricting Amendment Act of 2021 (D.C. Law 24-74; 69 D.C. Reg. 10) (Jan. 7, 2022)) ("Redistricting Act").

Plaintiff brings this "action for declaratory and injunctive relief pursuant to [the] Equal Protection Clause of the Fourteenth Amendment and the District of Columbia Home Rule Act[.]"

---

[2]  The Subcommittee on Redistricting's report is available at https://bit.ly/3Q6tdaT.

Compl. ¶ 1.  He claims that the Redistricting Act was "based on [defendants'] errant interpretation of the Equal Protection Clause of the Fourteenth Amendment" because "[t]his Clause applies to states, which the District of Columbia is not." *Id*. ¶ 2.  And, according to plaintiff, the "redistricting map violates his equal protection rights since the Defendants are seeking to protect a right that they are not constitutionally or statutorily permitted to uphold." *Id*. ¶ 4.  In Count One, he asserts:

> 28.    Plaintiff is being irreparably harmed by reason of Defendants' violations of the Equal Protection Clause of the Fourteenth Amendment.   The Defendants erroneously and illegitimately misappropriated the Equal Protection Clause within its congressional authority.

> 29.    By alleging this protection, the Plaintiff's constitutional rights were abridged because he specifically claimed the equal protection violations as a resident within a highly gentrifying neighborhood characterized by harming Black residents and intense social whitening.

*Id.* ¶¶ 28-29.  In Count Two, plaintiff asserts:

> 32.    Plaintiff is being irreparably harmed by reason of Defendants' violations of the District of Columbia Home Rule Act in that the Defendant[s] failed comply with Congress' plain and clear self-governance dependent on laws remaining consistent with the Constitution of the United States.

> 33.    The Home Rule Act had neither the intent nor effect of making the District of Columbia a State.

*Id.* ¶¶ 32-33.  Plaintiff demands "a declaratory judgment that the Defendants exceeded constitutional and congressional authority and therefore violated [his] Equal Protection rights," an order enjoining implementation of the Redistricting Act, unspecified compensatory damages, and an award of fees and costs.  *Id*. at 12.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

On a Rule 12(b)(1) motion, a plaintiff must establish that the Court has subject matter jurisdiction over his claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Because Rule 12(b)(1) concerns the Court's ability to hear a particular claim, the Court "must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Federal Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). In so doing, the Court accepts as true all of the factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff, but the Court need not "accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 63 (D.D.C. 2001). If the Court "'determines that it lacks subject matter jurisdiction, it can proceed no further.'" *Sledge v. United States*, 723 F. Supp. 2d 87, 91 (D.D.C. 2010) (quoting *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### B. Rules 8 and 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the . . . claim is about and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations in original) (citations and internal quotations omitted). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a] plaintiff need not make 'detailed factual allegations,'" but the "complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *VoteVets Action Fund v. McDonough*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Consequently, "a complaint survives a motion to dismiss even 'if there are two alternative explanations, one advanced by [the] defendant and the other advanced by the plaintiff, both of which are plausible.'" *VoteVets Action Fund*, 992 F.3d at 1104 (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)).

In deciding a motion under Rule 12(b)(6), the Court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Limited*, 22 F.4th 204, 210–11 (D.C. Cir. 2022).  Courts do not, however, "assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alteration in original) (citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also id*. at 687 (explaining that a failure to allege any of a claim's elements beyond "a sheer possibility that a defendant acted unlawfully" results in a dismissal).

The Court is mindful of its obligation to construe a *pro se* litigant's pleadings liberally. *See Dufur v. U.S. Parole Comm'n*, 34 F.4th 1090, 1096 (D.C. Cir. 2022) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per

curiam).  Accordingly, the Court considers "the complaint 'in light of all filings, including filings responsive to a motion to dismiss.'"  *Johnson v. District of Columbia*, 927 F.3d 539, 541 (D.C. Cir. 2019) (quoting *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam) (internal quotation marks omitted)).

## III.  DISCUSSION

According to plaintiff, defendants violated his right to equal protection when they relied on the "wrong" constitutional amendment.  *See* Compl. ¶ 2.  Defendants invoked the Equal Protection Clause of the Fourteenth Amendment, *see, e.g., id*. ¶¶ 22-23, which does not apply to the District of Columbia, *see, e.g., id*. ¶¶ 2, 8–11, and thus allegedly sought "to protect a right that they are not constitutionally or statutorily permitted to uphold," *id.* ¶ 4.  By these same actions, defendants allegedly violated the Home Rule Act which limits local government actions to those consistent with the United States Constitution, and the Redistricting Act violates the Constitution because it relies on the Fourteenth Amendment.  *See id*. ¶¶ 4, 32.

### A. Standing

"Three inter-related judicial doctrines—standing, mootness, and ripeness—ensure that federal courts assert jurisdiction only over 'Cases' and 'Controversies.'"  *Worth v. Jackson*, 451 F.3d 854, 855 (D.C. Cir. 2006) (quoting U.S. Const. art. III, § 2).  At issue in this case is "[t]he doctrine of Article III standing [which] addresses whether the plaintiff has demonstrated 'such a personal stake in the outcome of the controversy as to warrant [the] invocation of federal-court jurisdiction.'"  *New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv*., 208 F. Supp. 3d 142, 155 (D.D.C. 2016) (quoting *Summers v. Earth Island Inst*., 555 U.S. 488, 493 (2009)).  It is plaintiff's "responsibility . . . clearly to allege facts demonstrating that he is a proper party to

invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotation marks and citation omitted).

To demonstrate standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). "The burden of establishing these elements falls on the party invoking federal jurisdiction, and at the pleading stage, a plaintiff must allege facts demonstrating each element." *Rancho Vista del Mar v. United States*, No. 22-cv-0141, 2022 WL 16921533, at *4 (D.D.C. Nov. 14, 2022) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). "Subject matter jurisdiction does not exist in the absence of Article III standing." *Wooten v. United States Senate*, No. 20-cv-3037, 2021 WL 1564444, at *2 (D.D.C. Apr. 21, 2021) (citing *Lujan*, 504 U.S. at 560-61), *aff'd*, No. 21-5130, 2021 WL 4771917 (D.C. Cir. Oct. 1, 2021); *see Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (stating that a "defect of standing is a defect in subject matter jurisdiction").

### 1. Injury In Fact

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). "An injury is particular if it affects the party asserting standing in a personal and individual way." *Pharm. Rsch. & Manufacturers of Am. v. Dep't of Health & Human Servs.*, No. 20-cv-3402, 2023 WL 1795644, at *6 (D.D.C. Feb. 6, 2023) (quoting *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013) (quoting *Lujan*, 504 U.S. at 560 n.1)) (internal quotation marks omitted). "[G]eneralized grievances affecting many citizens cannot establish standing." *Pickup v. Biden*, No. 22-cv-0859, 2022 WL

17338099, at *5 (D.D.C. Nov. 30, 2022) (citing *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam)).

Defendants argue that plaintiff fails to allege an injury in fact, given the "wholly abstract" nature of his allegations. Councilmembers' Mem. at 4; *see* Reply at 4-5 (arguing plaintiff "identified only abstract harms that were neither 'concrete and particularized' nor 'actual or imminent'"). Their point is well taken. Aside from tracking the history of the Redistricting Act, the complaint alleges very few facts, none of which show an injury to plaintiff that is concrete and particularized, and actual or imminent.

Plaintiff attempts to address this pleading defect by identifying the harms he allegedly suffers: "poor political representation, diminished political power, gentrification, social space diminution, environmental pollution and racism, declining affordability, public projects catering to high-income earners, declining social diversity, and racism in political silence on suffering." Pl.'s Opp'n ¶ 11. Further, he allegedly is "adversely impacted by the dynamics of neighborhood change directly and through his particularized and unique community role." *Id.* None of these assertions advances plaintiff's cause. Not one of these purported injuries is concrete and particularized, and actual or imminent. At most, plaintiff proffers "generally available grievance[s]," *Lance*, 549 U.S. at 439, insufficient to demonstrate an injury personal to plaintiff, notwithstanding his unexplained "unique community role," Pl.'s Opp'n ¶ 11.

### 2. Causation

In addition to demonstrating an injury in fact, a plaintiff must allege "a causal connection between the injury and the conduct complained of[,]" *Lujan*, 504 U.S. at 560, meaning that "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court[,]" *id.* (internal quotation marks,

citation, and alterations omitted).  Here, plaintiff attributes his purported injuries to gentrification and its impact on his Southwest neighborhood.  Missing, however, are any factual allegations to connect these injuries to defendants' effort to redraw ward boundaries to account for population shifts.  As defendants note, the Redistricting Act "has no direct bearing on the District's growth in population or the welfare of its residents."  Councilmembers' Mem. at 5.

### 3. Redressability

"Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff."  *Rancho Vista del Mar*, 2022 WL 16921533, at *5 (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996)) (footnote omitted).  There must be factual allegations making it "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted).

Even if the Court were to enjoin implementation of the Redistricting Act, plaintiff could not achieve his goal.  Prior to the Redistricting Act, plaintiff's Southwest Waterfront neighborhood was in Ward 6, and it remains in Ward 6 since the Act became effective.   More importantly, plaintiff fails to allege facts to demonstrate that ward boundaries redrawn to his liking would redress the injuries, such as gentrification, he purportedly suffers.

Because plaintiff fails to allege facts showing an injury in fact traceable to defendants' actions redressable by this Court, plaintiff lacks standing and, therefore, the Court lacks subject matter jurisdiction.

### B. Equal Protection

Even if plaintiff had demonstrated standing, there is an alternate basis for dismissing the complaint: it fails to state an Equal Protection claim upon which relief can be granted.

Plaintiff misunderstands the Equal Protection Clause's application to the District of Columbia.  It is true that, under the Fourteenth Amendment, "no *State* shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)) (emphasis added).  But the Fifth Amendment's "due process clause is applicable to the District of Columbia and 'has been construed to incorporate a guarantee of equal protection of the law.'" *Am. Council of Life Insurers v. District of Columbia Health Benefit Exch. Auth.*, 73 F. Supp. 3d 65, 106 n.24 (D.D.C. 2014) (quoting *United States v. Jackson*, 553 F.2d 109, 120 n.19 (D.C. Cir. 1976) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954))); *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 158 (D.D.C. 2014) ("The Fourteenth Amendment does not apply to the District of Columbia, but the Equal Protection Clause of the Fourteenth Amendment applies to the District of Columbia through the Due Process Clause of the Fifth Amendment.") (citations omitted).

Although the District of Columbia is not a State, it, too, must "treat similarly situated persons alike . . . by virtue of the Fifth Amendment's guarantee of due process of law." *Women Prisoners of District of Columbia Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) (citation and internal quotation marks omitted).  Defendants' reliance on the Fourteenth Amendment was not misplaced, and there is no basis from which to conclude that, through the Redistricting Act, any defendant ran afoul of the United States Constitution or exceeded the authority bestowed on the District government in the Home Rule Act.

In addition, the complaint simply cannot survive a Rule 12(b)(6) motion because it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  In wholly conclusory fashion, plaintiff declares that he is

"irreparably harmed" because defendants violated the Fourteenth Amendment's Equal Protection Clause. Compl. ¶ 28; *see id.* ¶ 4. There are no facts from which the Court might "draw [a] reasonable inference that the defendant[s are] liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see Banks v. Bowser*, No. 18-cv-2146, 2019 WL 2161565, at *4 (D.D.C. May 17, 2019) (concluding that "only a mere mention of the Fifth Amendment's Equal Protection Clause, and a vague assertion that several defendants violated rights protected under it" amounted to "a naked allegation" which "does not allege facts showing a violation of the Fifth Amendment by any defendant").

If plaintiff intended to allege a violation of the Equal Protection Clause claiming that defendants discriminated against him on the basis of race, the claim would fail, too. Plaintiff would be required to show "intentional discrimination based on race," *Bellinger v. Bowser*, 288 F. Supp. 3d 71, 80 (D.D.C. 2017), and plaintiff does not allege that defendants purposefully took action with regard to ward boundaries because of his race, *see Iqbal*, 556 U.S. at 676 ("Where the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose."); *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

### C. Home Rule Act

Given plaintiff's failure to identify the particular provision of the Home Rule Act defendants violated, to present legal authority for the proposition that there exists a private right of action under the Home Rule Act, and to distinguish his Equal Protection claim under the

Home Rule Act from his constitutional claim, the Court summarily dismisses this claim under

Rule 12(b)(6).

      An Order is issued separately.

DATE: March 23, 2023                /s/
                                        EMMET G. SULLIVAN
                                        United States District Judge